UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | Chapter 7 |
| DAVID RUSI, | Case No. 23-40150-jmm |
| Debtor. | Adv. Pro. No. 1-23-01087-jmm |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THE IDEAL SUPPLY COMPANY,

               Plaintiff,

   v.

DAVID RUSI,

               Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF THE IDEAL
SUPPLY COMPANY'S MOTION FOR SUMMARY JUDGMENT**

KAUFMAN DOLOWICH LLP
*Attorneys for Plaintiff The Ideal Supply Company*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100

TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………………………ii

TABLE OF AUTHORITIES…………………………………………………………………..iii

PRELIMINARY STATEMENT……………………………………………………………….1

STATEMENT OF FACTS……………………………………………………………………..2

ARGUMENT…………………………………………………………………………………...2

    POINT I
    IDEAL SUPPLY ESTABLISHED THAT FAHRENHEIT DIVERTED TRUST
    FUNDS…………………………………………………………………………………....2

        A. Rusi's Own Testimony Conclusively Established his Role in Fahrenheit's
           Diversion of Trust Funds……………………………………………………………….3

        B. Rusi's Practice of Hiding Project Documents, to the Extent They Ever Existed,
           Provides Further Evidence of Diversion…………………………………………..5

    POINT II
    RUSI'S ADMISSION OF TRUST DIVERSION CONSTITUTES DEFALCATION
    WARRANTING A FINDING THAT IDEAL SUPPLY'S CLAIM IS
    NONDISCHARGEABLE UNDER 11 U.S.C. § 523(a)(4)……………………………….7

        A. Rusi, as Principal of Fahrenheit, Owed a Fiduciary Duty Not to Misappropriate
           Trust Property…………………………………………………………………..7
        B. Rusi Admitted that he Diverted Trust Funds to Pay for Non-Trust Expenditures,
           Including Subcontractors on Other Projects and Entertainment…………………..8

    POINT III
    RUSI'S ADMISSION OF TRUST DIVERSION CONSTITUTES DEFALCATION
    WARRANTING A FINDING THAT IDEAL SUPPLY'S CLAIM IS
    NONDISCHARGEABLE UNDER 11 U.S.C. § 727(a)(3)……………………………...11

CONCLUSION………………………………………………………………………..13

TABLE OF AUTHORITIES

Cases                                                                                                                          Page

*Atlas Bldg. Sys. Inc. v. Rende*
236 A.D.2d 494 (2d Dep't 1997)……………………………………………………………….7, 8

*Canron Corp. v. City of New York*
89 N.Y.2d 147 (1996)…………………………………………………………………………..7

*Holt Constr. Corp. v. Grand Palais, LLC*
108 A.D.3d 593 (2d Dep't 2013)……………………………………………………………….4

*In re Hyman*
502 F.3d 61 (2d Cir. 2007)………………………………………………………………….…..8

*In re Martin*
208 B.R. 799 (Bankr. N.D.N.Y. 1997)………………………………………………………..11

*In re Nemes*
323 B.R. 316 (Bankr. E.D.N.Y. 2005)………………………………………………………...10

*In re Nofer*
514 B.R. 346 (Bankr. E.D.N.Y 2014)……………………………………………………….....8

*In re Parra*
412 B.R. 99 (Bankr. E.D.N.Y. 2009)…………………………………………………………..7

*In re Young*
346 B.R. 597 (Bankr. E.D.N.Y. 2006)………………………………………………………...11

**STATUTES**

11 U.S.C. § 523(a)(4) .................................................................................................... passim
11 U.S.C. § 727(a)(3) .................................................................................................... passim
Lien Law § 71 ........................................................................................................................ 8
Lien Law § 75 ................................................................................................................ passim

Plaintiff The Ideal Supply Company ("Ideal Supply" or "Plaintiff") submits this Memorandum of Law in support of its motion pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56, for an order granting Plaintiff summary judgment against Defendant David Rusi ("Rusi" or "Defendant").

## PRELIMINARY STATEMENT

This adversary proceeding boils down to this: whether Ideal Supply's claim should be deemed nondischargeable in light of Defendant David Rusi's stunning admission under oath that he knowingly and recklessly diverted project trust funds for improper purposes as the controlling member of Fahrenheit Mechanical LLC ("Fahrenheit"). Rusi should not be able to shield himself from Ideal Supply's claim against him in light of his admitted misconduct.

Ideal Supply initially commenced an action against Fahrenheit and Rusi in New York County Supreme Court alleging, *inter alia,* that Rusi breached various contracts with Ideal Supply and diverted funds for improper purposes in violation of the New York Lien Law (the "Lien Law"). (*See The Ideal Supply Company v. Fahrenheit Mechanical, LLC et al.*, Index No. 152298/2021, hereinafter referred to as, the "State Court Action.") Although Rusi appeared in the State Court Action represented by counsel, he refused to respond to any of Ideal Supply's discovery demands, including those pertaining to Fahrenheit's management of project funds. As a result of Rusi's persistent defiance of court orders and his failure to provide *any* project documents, the Court in the State Court Action granted Ideal Supply's motion for a default against Rusi and the Clerk entered judgment against him in Ideal Supply's favor in the amount of $234,073.77. (A copy of the judgment against Rusi (the "Rusi Judgment") is annexed to the Ortmann Affirmation as Exhibit 13.)

Now, in an all too convenient case for Rusi of déjà vu, Ideal Supply again finds itself in a court proceeding against Rusi where Rusi refuses to provide Ideal Supply with any of the project documents relevant to whether Fahrenheit properly kept and retained books and records of trust funds as required by the Lien Law. Instead, Rusi offers halfhearted excuses as to why he provided *no* project documents. Indeed, while Rusi openly admitted that he diverted trust funds, he could not even recall on which projects he had done so, raising the specter that diversions occurred with such frequency across so many projects that these occurrences no longer stood out to him in his mind. Regardless, Rusi's candid admission of trust fund diversion, coupled with his failure since 2021 to produce even a single project document that would enable Ideal Supply to determine if Fahrenheit properly expended trust funds, makes it clear that it is no longer a question of whether Rusi consented to Fahrenheit's diversion of funds -- he did. Accordingly, Ideal Supply respectfully asks this Court to deem Ideal Supply's claim against Rusi non-dischargeable under 11 U.S.C. § 523(a)(4).

**STATEMENT OF FACTS**

The Court is respectfully referred to the Affirmation of Erik A. Ortmann, Esq. dated July 19, 2024 for a recitation of the relevant background and procedural history.

**ARGUMENT**

**POINT I**

**IDEAL SUPPLY ESTABLISHED
THAT FAHRENHEIT DIVERTED TRUST FUNDS**

The record is clear that Fahrenheit diverted funds given Rusi's unequivocal deposition testimony that as a principal of Fahrenheit he knowingly participated and/or consented to such diversion.

Moreover, any defense that Rusi might otherwise mount based on project documents is

unavailable to him given his abject failure to produce any such documents. Fahrenheit, as mechanical subcontractor, entered into construction subcontracts with general contractors in connection with construction projects performed at the following five (5) locations (collectively, the "Projects"):

i.   230 Vesey Street, New York, New York;
ii.  ii. 1 Manhattan West, New York, New York;
iii. iii. Pier 57 located at 25 11th Avenue, New York, New York;
iv.  iv. 201 Varick Street, New York, New York; and
v.   v. LaGuardia Airport Flushing, New York

Lien Law § 75 requires Fahrenheit to maintain certain projects books and records. Ideal Supply served Fahrenheit and Rusi with demands for these books and records in the State Court Action, and then again during the pendency of this this proceeding. Both times, Rusi refused to produce any records meeting the Lien Law § 75 requirements. On the record before this Court, and as set forth in detail below, Ideal Supply conclusively established that Fahrenheit diverted trust funds with Rusi's full knowledge, consent, and participation.

A. Rusi's Own Testimony Conclusively Established
   his Role in Fahrenheit's Diversion of Trust Funds

While Rusi persists in his refusal to provide Ideal Supply any project documents, his deposition testimony in this matter conclusively establishes not only that Fahrenheit diverted trust funds, but that Rusi knew of that diversion and participated in it. Rusi testified that he founded Fahrenheit in or around 2018, which remained operating at the time of the Subject Projects in 2020. (Rusi Tr. at 22:21-25.) Before Fahrenheit, Rusi owned a general contracting construction company called Phoenix Network, which he owned and operated for approximately three years. (Rusi Tr. at 15:17-16:2.) Before Phoenix, Rusi owned another general contracting construction company called SDB. (Rusi Tr. at 16:12-17:5.) Thus, according to Rusi's own testimony, by the time Fahrenheit was performing work on the Subject Projects, Rusi had multiple years of

3

experience in the construction field, and at least six years of experience as the owner of a construction company that would have been receiving and maintaining trust funds under the Lien Law. Rusi's own counsel acknowledged this, writing in an email that Rusi "was experienced in business, and in running a construction business." (Exhibit 19 to the Ortmann Affirmation.) As an experienced contractor and owner of a construction business, Rusi was aware, or should have been aware, that, at the time he accepted trust funds from an owner or general contractor, it would be illegal for him to divert them to another project. *See Allen*, 2022 WL 17585066, at *5.

Given Rusi's years of experience, coupled with his position as majority owner of Fahrenheit, he should have been fully aware of his obligations as a trustee, and the fact that the funds he received in connection with construction projects were trust funds. Nevertheless, Rusi's own testimony shows that he disregarded these obligations and engaged in a pattern of diverting funds from Fahrenheit across so many projects. While Rusi now struggles to recall the specific projects from which he diverted funds, Rusi specifically recalled using funds from projects to pay subcontractors on different projects, a clear violation of the Lien Law, (Rusi Tr. at 57:4-9). He also acknowledged, although he could not definitively recall, that Fahrenheit may have used funds from one project to pay laborers on another project. (Rusi Tr. at 10-14.)

Moreover, Rusi testified that Fahrenheit used funds to pay his own personal expenses. (Rusi Tr. at 15-17.) When pressed on what kind of personal expenses, Rusi elaborated that Fahrenheit would use project funds to pay "entertainment, I'm sure, entertainment, that kind of thing," (Rusi Tr. at 57:15-58:5). Rusi later elaborated that Fahrenheit used project funds to pay for "lunches, dinners, [and other items] sales associated." (Rusi Tr. 59:6-9.) Rusi's casual attitude towards his own decisions permitting the use of project funds for such expenses constitutes clear violations of the Lien Law warranting imposition of liability. *See Holt Constr. Corp. v. Grand*

4

*Palais, LLC*, 108 A.D.3d 593, 597 (2d Dep't 2013) (holding individual officers of corporate trustee personally liable for failure to hold proceeds from sale of property to pay for cost of improvements and for using proceeds to satisfy other various debts in violation of the Lien Law).

> B. Rusi's Practice of Hiding Project Documents, to the Extent They Ever Existed, Provides Further Evidence of Diversion

Under Lien Law § 75, an Article 3A trustee is required to keep elaborate books and records detailing the trust assets receivable (Lien Law § 75[3] [A] ), the trust accounts payable (Lien Law 75 § [3][B] ), the trust funds received (Lien Law § 75[3][C] ) and the payments made with trust assets (Lien Law § 75[3][D] ). The record of payments made with trust assets must specify the name and address of each payee (Lien Law § 75[3][D][1]), the date and place where each payment was made (Lien Law § 75[3][D][2] ), the amount of each payment (Lien Law § 75[3][D][3] ) and the nature of the trust claim being paid, i.e., whether payments were made for labor (Lien Law § 75 [3][D][4] ). Failure to keep these records is presumptive evidence under New York state law that trust funds were diverted (Lien Law § 75[4]; see also Lien Law § 79–a[3] ).

Ideal Supply served on Fahrenheit and Rusi in the State Court Action a demand for an accounting of trust assets for the Projects, document demands, and interrogatories. Rusi intentionally failed and refused to provide basic information required in connection with Ideal Supply's trust diversion claim. (Ortmann Affirmation ¶¶ 7-18.) Rusi's defiance of court orders in the State Court Action ultimately led the Court to strike his Answer and enter judgment against him. (Id. ¶¶ 20-25.)

As part of post-judgment collection efforts, Ideal Supply served on Rusi a subpoena duces tecum and ad testificandum on Rusi. Rusi ignored that subpoena as he had ignored Ideal Supply's discovery demands in the State Court Action. Then, in connection with this adversary proceeding, Ideal Supply again served on Fahrenheit and Rusi a demand for an accounting of trust assets for

each of the Projects and document demands. (Ortmann Affirmation ¶ .)  In addition, Ideal Supply served on Rusi document demands requesting, among other things, copies of all payments received by Fahrenheit on each of the Projects, copies of all payments made by or on behalf of Fahrenheit to any trust beneficiary for each of the Projects, and copies of all payments made by or on behalf of Fahrenheit for any trust expenditure for each of the Projects.  (Id. ¶¶ 30-32.)  Rusi did not even bother responding to these demands until well after the deadline passed, and even then failed to submit *any* records meeting the Lien Law § 75 requirements and failed to produce even a single Project document.  (Id. ¶¶  34-41.)

While Rusi attested that he made certain efforts in this proceeding to locate Project records, Ideal Supply seriously questions Rusi's veracity.  As described, Rusi's refusal to provide Project Documents in this adversary proceeding is not set in a vacuum.  Rather, it is part of a years-long pattern of Rusi's defiance and evasion of demands, subpoenas, and court orders to produce Project documents, and Rusi's consistent refusal to do so.  While his excuses may be new, the end result was predictable.  Once again, Rusi failed to produce *any* Project documents or any documents whatsoever to show that such project documents ever existed.

Given this history, Rusi's explanation for his refusal *this time around* to provide project records is simply not credible.  Under New York state law, Rusi's failure to produce records would entitle Ideal Supply to a presumption that Fahrenheit diverted trust funds.  While that presumption is not applied for purposes of section 523 in bankruptcy court, it should not be lost on this Court that Rusi has engaged in a four-year battle to deny Ideal Supply the information necessary to determine the scope of Fahrenheit's diversion of trust fund assets and Rusi's acknowledgment and participation therein.  *See* Lien Law § 75[4]; see also Lien Law § 79–a[3].

## POINT II

**RUSI'S ADMISSION OF TRUST DIVERSION
CONSTITUTES DEFALCATION WARRANTING A FINDING THAT
IDEAL SUPPLY'S CLAIM IS NONDISCHARGEABLE UNDER 11 U.S.C. § 523(a)(4)**

As set forth in Point I, Ideal Supply established that Fahrenheit diverted trust funds and that Rusi participated in that diversion. The question remains whether Rusi's participation in that diversion constitutes defalcation under the bankruptcy code that warrants a finding that Ideal Supply's claim is nondischargeable. Ideal Supply submits that it does.

Defalcation, broadly defined, includes any failure, innocent or otherwise, by a fiduciary to account for or pay over trust fund monies. "To prevail under § 523(a)(4), the challenging creditor must show that (1) the debtor acted in a fiduciary capacity; and (2) the debtor committed defalcation while acting in that capacity." *In re Parra*, 412 B.R. 99, 104 (Bankr. E.D.N.Y. 2009).

A. Rusi, as Principal of Fahrenheit, Owed a
   Fiduciary Duty Not to Misappropriate Trust Property

Here, there can be no question that Rusi acted in a fiduciary capacity when he diverted the project funds entrusted to him. "[T]he primary purpose of [Article 3A of] the [New York[ Lien Law is to ensure that 'those who have directly expended labor and materials to improve real property . . . at the direction of the owner or a general contractor' receive payment for the work actually performed." *Atlas Bldg. Sys. Inc. v. Rende*, 236 A.D.2d 494, 495 (2d Dep't 1997) (quoting *Canron Corp. v. City of New York*, 89 N.Y.2d 147, 155 (1996).) Under Article 3A of the New York Lien Law ("Article 3A"), a statutory trust was created when the general contractors of the Projects paid Fahrenheit for the HVAC service on those Projects, and Fahrenheit became obligated to Ideal Supply as one of the trust's beneficiaries to use the monies paid by the general contractors for payment of trust claims for labor performed and/or materials furnished in connection with the subject Projects. N.Y. Lien Law §§ 70—79–a (Consol. 2010).

7

Moreover, it is well-established law that in addition to a *contractor-entity's* status as a trustee, the *principals* of that entity are also trustees who may be held liable for diversion of trust funds. Principals of a company will be held personally liable for participation in a breach of trust because they are "under a duty to the beneficiaries of a trust administered by the corporation not to cause the corporation to misappropriate trust property." *Atlas Bldg. Sys. Inc.*, 236 A.D.2d at 495. Given that the principals of a company, as well as the company itself, may be held liable for breaches of the fiduciary duty owed to subcontractors-trust beneficiaries, it follows that Rusi, as principal of Fahrenheit, acted in a fiduciary capacity when Fahrenheit received trust funds to be used *solely* for trust purposes as enumerated in the Lien Law.

B. Rusi Admitted that he Diverted Trust Funds to Pay for Non-Trust
   <u>Expenditures, Including Subcontractors on Other Projects and Entertainment</u>

The second prong under § 523(a)(4) requires Ideal Supply to establish that committed defalcation in his role as fiduciary. In 2007, the Second Circuit clarified the degree of fault or state of mind that a plaintiff-creditor must show to prevail on a § 523(a)(4) cause of action. The Second Circuit explained that defalcation under § 523(a)(4) requires a showing of "conscious misbehavior or extreme recklessness." *In re Hyman*, 502 F.3d 61, 67-68 (2d Cir. 2007). A fiduciary behaves recklessly when he "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty." *In re Nofer*, 514 B.R. 346, 355 (Bankr. E.D.N.Y. 2014) (internal citation and quotation marks omitted).

N.Y. Lien Law § 71 contains the exhaustive list of "expenditures arising out of the improvement of real property" for which "the trust assets of which a contractor or subcontractor is trustee shall be held and applied." N.Y. Lien L. § 71. Moreover, it is well-settled that a trustee *may not* use the funds received on one project to pay unrelated expenditures, e.g., expenditures on another project.

8

Here, Rusi unequivocally testified under oath that he was personally aware of, but permitted, the diversion of trust funds in violation of several provisions of the lien law,ent even personally engaged in trust fund diversion.

First, as is made clear by the following exchange, Rusi possessed knowledge that Fahrenheit used project funds to pay subcontractors on other projects in violation of the Lien Law but permitted it to happen anyway:

> Q     Did Fahrenheit ever pay – take funds from one project to pay subcontractors on another?
> A     Yes.

(Rusi Tr. 57:4-6).

Second, Rusi testified that he knew that the owners, including himself, used project funds provided to Fahrenheit to pay "personal expenses of its owners," including non-trust purposes like "entertainment," "lunches," "dinners," and other things that were "sales associated."

> Q     Did Fahrenheit ever use funds received on a project to pay personal expenses of its owners?
> A.    Yes.
>
> \* \* \*
>
> Q     What kind of personal expenses would those funds have been used for?
> A     Anything, anything –
> Q     Do you recall any specifics?
> A     No.
> Q     Do you recall –
> A     Entertainment, I'm sure, entertainment, that kind of thing. I mean, I was just trying to keep the company going, so at certain points it was just trying to get it –
>
> \* \* \*
>
> Q     Project funds would be used to pay for entertainment?
> A     Yes.
> Q     What kind of entertainment?
> A     Lunches, dinners, sales associated.

(Rusi Tr. 57:5-6; 57:21-25, 58:1-5; 59:5-9.)

Finally, while Rusi could not specifically recall if Fahrenheit diverted project funds to pay laborers on other projects, he could not explicitly rule it out.

> Q    Did Fahrenheit ever take funds from one project to pay laborers on another project?
> A    I don't know.
> Q    You don't know or you don't recall?
> A    I don't recall.

(Rusi Tr. 57:10-14.)

Given Rusi's years of experience in the construction industry and running his own construction businesses, his cavalier attitude towards his role as a fiduciary and his readiness to admit that he overtly and routinely would divert trust funds clearly meets the "extreme recklessness" standard of § 523(a)(4), if not conscious misbehavior. Indeed, Rusi appeared so detached from the significance of his wrongdoing, he could not even recall the names of the projects where he and Fahrenheit's other owners diverted funds to themselves and other improper expenditures. It does not matter. Rusi's testimony establishes a pattern of trust diversion that clearly constitutes defalcation within the meaning of section 523(a)(4). Accordingly, Ideal Supply asks that the Court deem its debt nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

## POINT III

### RUSI'S ADMISSION OF TRUST DIVERSION CONSTITUTES DEFALCATION WARRANTING A FINDING THAT IDEAL SUPPLY'S CLAIM IS NONDISCHARGEABLE UNDER 11 U.S.C. § 727(a)(3)

11 U.S.C. § 727(a)(3) permits the Court to deny discharge for a debtor's failure to maintain adequate financial records. "[T]he fundamental policy underlying §727(a)(3) is to ensure that the trustee and the creditors receive sufficient information to effectively enable them to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct debtor's

business transactions." *In re Nemes*, 323 B.R. 316 (Bankr. E.D.N.Y. 2005) (internal quotation marks and citation omitted).

As set forth in the Ortmann Affirmation and above, Ideal Supply requested that Rusi provide copies of Fahrenheit's Project records kept while those Projects remained ongoing, including copies of all payments received and allegedly made to subcontractors. (Ortmann Affirmation ¶¶ 17-21, 40-41.) Ideal Supply requested these documents in document demands served in the State Court Action, in Demands for Trust Accounting served during the pendency of the State Court Action, in document demands served in this Adversary Proceeding, and in Demands for Trust Accounting served during the pendency of this Adversary Proceeding. Each time, Rusi responded by failing to produce even a single Project document, despite numerous extensions of time granted by Ideal Supply to allow Rusi to search and provide the requested documentation. (*Id.*) To date, despite litigation spanning more than three (3) years, extensions of time, and multiple requests, Rusi has yet to provide a single Project Document.

Denial of discharge is warranted where any one of section 727's subsections is proved by a preponderance of the evidence. *In re Martin*, 208 B.R. 799, 805 (Bankr. N.D.N.Y. 1997). Additionally, Rusi's failure to retain the required records is sufficient to establish the elements for section 727, as "intent is not a necessary element of an objection to discharge." *In re Young*, 346 B.R. 597 (Bankr. E.D.N.Y. 2006). Given that Rusi utterly failed to keep and/or turn over the subject Project records, the Court should deny discharge.

## CONCLUSION

In light of the foregoing, Ideal Supply respectfully requests that the Court grant Ideal Supply summary judgment on each of its causes of action, concluding that Fahrenheit diverted funds and that Rusi, as its principal, consented to that diversion, and deem Ideal Supply's claim

nondischargeable under section 523(a)(4), and deny discharge under section 727(a)(3), along with such further and other relief as the Court deems appropriate.

Dated: Woodbury, New York
       July 19, 2024

                              KAUFMAN DOLOWICH LLP
                              *Attorneys for Plaintiff The Ideal Supply Company*

By: _____
                              Erik A. Ortmann
                              Adam A. Perlin
                              135 Crossways Park Drive, Ste. 201
                              Woodbury, NY 11797
                              (516) 681-1100