UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | Chapter 7 |
| DAVID RUSI, | Case No. 23-40150-jmm |
| Debtor. | Adv. Pro. No. 1-23-01087-jmm |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THE IDEAL SUPPLY COMPANY,

                Plaintiff,

      v.

DAVID RUSI,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF THE IDEAL SUPPLY
<u>COMPANY'S MOTION FOR SUMMARY JUDGMENT</u>**

KAUFMAN DOLOWICH LLP
*Attorneys for Plaintiff The Ideal Supply Company*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………..iii

PRELIMINARY STATEMENT…………………………………………………………………1

ARGUMENT…………………………………………………………………………………...2

    RUSI RAISES NO GENUINE ISSUE OF MATERIAL FACT AS TO HIS DEFALCATION WARRANTING DISCHARGE UNDER 11 U.S.C. § 523(a)(4) AND 727(a)(3)………………………………………..…………………………………....2

        A. Rusi's Own Testimony Establishes that Plaintiff is Entitled to a Finding of Non-Dischargeability Under 11 U.S.C. § 523(a)(4)…………...……………………….2

        B. While Additional Evidence is Not Required, Rusi's Practice of Hiding Project Documents Further Warrants a Finding of Non-Dischargeability under Section 523(a)(4)……………………………………………………………………..6

        C. Rusi's Failure to Ever Produce Project Records, Compounded by his Non-Credible Explanations in this Adversary Proceeding, Warrant a Finding of Non-Dischargeability Under Section 727(a)(3)…………………………………....8

CONCLUSION……………………………………………………………………………9

# TABLE OF AUTHORITIES

Cases                                                                                                               Page

*Allen v. Zizzi Constr. Corp.,*
Index No. 654345/2015, 2022 WL 17585066 (Sup. Ct. N.Y. County 2022)………………4 n.2, 5

*Colavito v. New York Organ Donor Network, Inc.*
438 F.3d 214 (2d Cir. 2006)……………………………………………………………………….7

*In re Dziedzic*
452 B.R. 361 (Bankr. W.D.N.Y. 2011)…………………………………………………………...5, 6

*In re Hyman*
502 F.3d 61 (2d Cir. 2007)……………………………………………………………….passim

*In re Martin*
208 B.R. 799 (Bankr. N.D.N.Y. 1997)……………………………………………………………8, 9

*In re Nemes*
323 B.R. 316 (Bankr. E.D.N.Y. 2005)………………………………………………………….....8

*In re Nofer*
514 B.R. 346 (Bankr. E.D.N.Y. 2014)…………………………………………………………….5, 6

*Indigo Secured High Income Note, Ltd. v. HCI Secured Medical Receivables Special Purpose Corp.*
Index No. 650487/2013, 2015 WL 9260908 (Sup. Ct. N.Y. County Jul. 10, 2015)…………...7, 9

*In re Parra*
412 B.R. 99 (Bankr. E.D.N.Y. 2009)……………………………………………………………...2, 4


**STATUTES**

11 U.S.C. § 523(a)(4)..................................................................................................... passim

11 U.S.C. § 727(a)(3)..................................................................................................... passim

Lien Law § 71 ........................................................................................................3 n.1, 4

Lien Law § 75 .................................................................................................................. passim


**SECONDARY SOURCES**

Robert A. Rubin & Catherine M.K. Brown, *New York Construction Law Manual* § 9:68 (2d ed.) (November 2023 Update) .................................................................................................3

Plaintiff The Ideal Supply Company ("Ideal Supply" or "Plaintiff") submits this Reply Memorandum of Law in further support of its motion pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56, for an order granting Plaintiff summary judgment against Defendant David Rusi ("Rusi" or "Defendant").

## **PRELIMINARY STATEMENT**

In its opening brief, Ideal Supply quoted extensively from Rusi's own deposition testimony acknowledging his direct role in diverting trust funds for improper purposes. Rusi raises no factual dispute regarding this testimony, which conclusively establishes the non-dischargeability of Ideal Supply's clam under 11 U.S.C. § 523(a)(4).

In addition, Ideal Supply established that its claim is non-dischargeable under 11 U.S.C. § 727(a)(3). Ideal Supply recounted in detail in its opening brief and in the Ortmann Affirmation Rusi's litigation history with Ideal Supply that spans two separate court proceedings and evinces an unmistakable pattern of defiance of court orders. In the course of these litigations, Rusi failed to produce even a single project document despite multiple demands under the Lien Law for trust accountings, discovery requests, and follow-up emails with counsel, all proving that Fahrenheit never properly maintained books and records as required by the Lien Law.

Rusi attempts to refute this unalterable truth by asserting that he never received requests for these documents in the State Court Action – a claim patently belied by the fact that Ideal Supply sent certain requests directly to Rusi at Fahrenheit and some directly to Rusi's counsel of record. Rusi also attempts to raise an issue of fact as to Fahrenheit's recordkeeping by asserting that he made diligent efforts now to find them – although he could not specifically recall what documents Fahrenheit ever maintained or how it maintained them. In short, it is indisputable that Rusi failed to ever provide project documents, failed to specifically recall ever seeing the documents in

1

question, lacked knowledge of Fahrenheit's record keeping and retention practices, and admitted that he regularly diverted trust funds. As such, the Court possesses sufficient evidence to conclude that Fahrenheit failed to maintain the proper books and records required to conclude that Plaintiff's claim against Rusi in this bankruptcy is non-dischargeable under 11 U.S.C. § 727(a)(3).

## **ARGUMENT**

### **RUSI RAISES NO GENUINE ISSUE OF MATERIAL FACT AS TO HIS DEFALCATION WARRANTING DISCHARGE UNDER 11 U.S.C. § 523(a)(4) AND 727(a)(3)**

A. *Rusi's Own Testimony Establishes that Plaintiff is Entitled to a Finding of Non-Dischargeability Under 11 U.S.C. § 523(a)(4)*

To render a claim non-dischargeable under 11 U.S.C. § 523(a)(4), a challenging creditor must show that (1) the debtor acted in a fiduciary capacity; and (2) the debtor committed defalcation while acting in that capacity." *In re Parra*, 412 B.R. 99, 104 (Bankr. E.D.N.Y. 2009). Rusi does not dispute that as both an officer and majority shareholder of Fahrenheit, he was acting in a fiduciary capacity at the time of the Subject Projects in 2020 when the trust diversions occurred. (*See* Opening Mem. at 7-8; *see also generally* Opp. Mem.)

The only remaining question therefore is whether Rusi committed defalcation while acting in his fiduciary capacity. As set forth in Plaintiff's opening brief, Rusi's own deposition testimony in this matter conclusively and unequivocally establishes not only that Fahrenheit diverted trust funds, but that Rusi knew of that diversion and participated in it. As a reminder, Rusi testified to the following facts at his deposition:

(i) that Rusi had extensive experience in construction at the time of the Subject Projects in 2020, including not less than six years of experience as the owner of a construction company that would have been receiving and maintaining trust funds under the Lien Law (Rusi Tr. at 15:17-16:2; 16:2-17:5; 22:21-25) (Rusi testifying to his many years of experience in the construction field); and

(ii) that Rusi himself knew of and participated in trust fund diversion, including testifying to the following specific examples:

2

      a. using funds from projects to pay subcontractors on different projects (Rusi Tr. at 57:4-9);
      b. possibly using funds from one project to pay laborers on another project (Rusi Tr. at 10-14);
      c. using project funds to pay his own personal expenses; (Rusi Tr. at 15-17);
      d. using project funds to pay for "entertainment" (Rusi Tr. at 57:15-58:5); and
      e. using project funds to pay for "lunches, dinners, [and other items] sales associated." (Rusi Tr. 59:6-9.)

These statements, which Rusi made under oath, are not in dispute. It is further indisputable that these expenditures are not proper trust expenditures under the Lien Law and constitute trust diversion under the Lien Law. N.Y. Lien Law § 71 contains an exhaustive list of "expenditures arising out of the improvement of real property" for which "the trust assets of which a contractor or subcontractor is trustee shall be held and applied."[1] N.Y. Lien L. § 71.

It is telling that Rusi in his opposition does not even mention, much less refute, his testimony that he knew Fahrenheit used project funds to pay subcontractors on other projects. It is well-settled law that a trustee diverts trust funds when it uses funds received on one project to pay expenditures on another project, including to pay subcontractors on other projects. *See, e.g.*, Robert A. Rubin & Catherine M.K. Brown, *New York Construction Law Manual* § 9:68 (2d ed.) (November 2023 Update) ("the contractor cannot pay Paul with Peter's money (i.e., the proceeds from one project cannot be used to satisfy obligations incurred on another project)"). Rusi's

---

[1] The list of permitted trust expenditures under Lien Law § 71 is as follows:
(a) payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen;
(b) payment of the amount of taxes based on payrolls including such persons and withheld or required to be withheld and taxes based on the purchase price or value of materials or equipment required to be installed or furnished in connection with the performance of the improvement;
(c) payment of taxes and unemployment insurance and other contributions due by reason of the employment out of which such claims arose;
(d) payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnish such supplements, to the extent that the trustee, as employer, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party;
(e) payment of premiums on a surety bond or bonds filed and premiums on insurance accrued during the making of the improvement, including home improvement, or public improvement; and
(f) payment to which the owner is entitled pursuant to the provisions of section seventy-one-a of this chapter.

unequivocal testimony that he knew Fahrenheit was diverting funds in this manner and permitted it to happen anyway is alone sufficient to establish defalcation under section 523(a)(4) and warrants a finding that Plaintiff's debt is nondischargeable.

Moreover, even in his opposition, Rusi acknowledges that he used project funds "to entertain clients to obtain new work." (Opp. Mem. at 5.) This supports Rusi's previous testimony that he diverted trust funds by using them for "entertainment" purposes. Rusi explains this diversion by claiming that he "was wholly within the framework of the operations of Fahrenheit Mechanical." His explanation provides no legitimate justification. (*Id.*) Using project funds to entertain clients is not a proper trust fund expenditure under Lien Law § 71. Full stop. As such, Rusi's admission that he used project funds to entertain clients is an admission that he knew of, permitted, and participated in Fahrenheit's diversion of trust funds for non-trust purposes, thereby establishing that Rusi engaged in defalcation while an officer and majority shareholder of Fahrenheit, and therefore rendering discharge of Plaintiff's claim inappropriate. *In re Parra*, 412 B.R. at 104.[2]

In his opposition, Rusi recites the legal standard announced by the Second Circuit in *In re Hyman* that requires that defalcation under section 523(a)(4) be the result of "conscious misbehavior or extreme recklessness." Rusi appears to hope that he can hide behind the Second Circuit's scienter requirement, but he fails to perform any analysis of his relevant conduct or

---

[2] It is worth noting that Rusi does not argue that he was unaware of the trust fund requirements of the Lien Law. Even if Rusi raised such argument, it would be wholly without merit. As Rusi testified, he had extensive experience in construction at the time of the Subject Projects in 2020, including not less than six years of experience as the owner of a construction company that would have been receiving and maintaining trust funds under the Lien Law. (*See* Rusi Tr. at 15:17-16:2; 16:2-17:5; 22:21-25; *see also* Rusi Counterstatement of Material Facts ¶ 42 (admitting that he was "experienced in business, and in running a construction business.). As an experienced contractor, Rusi was accordingly aware, at the time that he accepted trust funds, that it would be illegal for him to divert them to another project. *See, e.g.*, *Allen v. Zizzi Constr. Corp.*, Index No. 654345/2015, 2022 WL 17585066, at *5 (Sup. Ct. N.Y. County 2022).

testimony. *In re Hyman*, 502 F.3d 61, 68 (2d Cir. 2007). Perhaps this is because scrutiny of the record clearly establishes that Plaintiff met its burden and is entitled to the relief sought.

As set forth in Plaintiff's opening brief, a plaintiff-creditor can establish the requisite scienter by showing that a fiduciary behaves recklessly, *i.e.*, when he "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty." *In re Nofer*, 514 B.R. 346, 355 (Bankr. E.D.N.Y. 2014) (internal citation and quotation marks omitted). Rusi's bald assertions to the contrary aside, there is no factual question here that Rusi's conduct here meets the standard. Rusi admits that he was an "experienced contractor" with years running a construction business. (Rusi Counterstatement of Material Facts ¶ 42.) Thus, any suggestion that Rusi was unaware of the Lien Law requirements governing trust funds constitutes "conscious disregard" or "willful blindness." *See e.g.*, *Allen v. Zizzi Constr. Corp.*, Index No. 654345/2015, 2022 WL 17585066, at *5 (Sup. Ct. N.Y. County 2022) ("As an experienced contractor, [defendant] was aware that, at the time he accepted the trust funds, it would be illegal for him to divert them to another project.").

The case of *In re Dziedzic*, 452 B.R. 361 (Bankr. W.D.N.Y. 2011), is particularly instructive. In *Dziedzic*, the debtor was a chiropractor who decided to remodel a building she already owned for use as a chiropractic office. The debtor failed to pay her contractor, filed for bankruptcy, and the contractor-creditor sued the debtor in an adversary proceeding, asserting that the debtor's payment of expenditures unrelated to construction constituted a trust diversion under Article 3-A of the Lien Law. The Court agreed, noting that "[w]ith regard to a trust arising under Article 3-A of the Lien Law, a court may infer a conscious misuse from expenditures that bear no relation to any construction activity." *Id.* at 365. This is true even if the debtor lacks *any* experience in the construction industry.

Applying this principle, the Court found that the debtor-chiropractor – who unlike Rusi lacked any experience in construction or knowledge of the Lien Law – improperly defalcated funds under section 523(a)(4) by using trust funds for items wholly unrelated to the construction project. Specifically, the Court held that "[n]ot only did these payments violate the Lien Law, but their total disconnect from construction activity will allow the court to infer the requisite degree of conscious misuse." *In re Dziedzic* at 366.

Rusi's situation here is more egregious. Rusi possessed, according to him, extensive experience in the construction industry at the time of the Subject Projects. Under these circumstances, Plaintiff asserts that Rusi's expenditures on subcontractors working on other projects in violation of the Lien Law also demonstrates the requisite scienter. Moreover, like the debtor in *Dziedzic*, Rusi also expended trust funds on items wholly unrelated to the Subject Projects, including payments for "lunches, dinners, [and other items] sales associated." (Rusi Tr. 59:6-9.) Rusi's testimony in this proceeding conclusively establishes that he knew of, and directly participated in, numerous instances of trust diversion, including his testimony that he knew Fahrenheit used project funds to pay subcontractors on other projects and his admission even in opposition that he used project funds "to entertain clients to obtain new work." (Rusi Tr. at 57:4-9); Opp. Mem. at 5.) On this record, Plaintiff is entitled to a declaration that its claim is non-dischargeable under 11 U.S.C. § 523(a)(4). *See In re Dziedzic* at 366; *In re Hyman*, 502 F.3d at 68; *In re Nofer*, 514 B.R. at 355.

B. *While Additional Evidence is Not Required, Rusi's Practice of Hiding Project Documents Further Warrants a Finding of Non-Dischargeability under Section 523(a)(4)*

Rusi, unable to refute the facts set forth above established by unequivocal, admissible evidence, focuses the bulk of his opposition on refuting the claim that Fahrenheit failed to maintain proper records. But as set forth in Plaintiff's opening brief and above, the Court need not even

address this issue to conclude that Plaintiff met its burden under 11 U.S.C. § 523(a)(4).

In any event, Rusi's protestations concerning the missing books and records that the Lien Law requires Fahrenheit to maintain fall flat. Under Lien Law § 75, an Article 3A trustee is required to keep elaborate books and records. Rusi maintains Fahrenheit kept all such records but did not produce them in the State Court Action because he "did not receive any of the emails referenced by Plaintiff relating to the State Court Action." (Rusi Opp. Affidavit ¶ 22.) Such an unsupported, conclusory statement is insufficient to raise a genuine issue of fact necessary to defeat summary judgment. *See, e.g.*, *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 222 (2d Cir. 2006) ("the opposing party may not rest upon mere conclusory allegations or denials").

Moreover, Rusi's statement is belied by the record. Rusi was represented in the State Court Action by Christopher Travis of Travis Law PLLC. Every email referenced by Plaintiff in the Ortmann Affirmation detailing Plaintiff's efforts to obtain books and records was sent to Rusi's counsel of record in the State Court Action. This constitutes service on Rusi and Rusi cannot now claim he never received them. *See Indigo Secured High Income Note, Ltd. v. HCI Secured Medical Receivables Special Purpose Corp.*, Index No. 650487/2013, 2015 WL 9260908, at *1 (Sup. Ct. N.Y. County Jul. 10, 2015) ("Until it is discharged in a manner prescribed by law, MHH remains counsel of record for defendants [and] service on MHH constitutes service on defendants.").

In addition, Plaintiff served at the time of the State Court Action a Demand for Trust Accounting on Fahrenheit directly, which Rusi also ignored. Rusi's self-serving statement that he did not receive emails requesting trust accounting information is simply insufficient to defeat Plaintiff's motion, particularly as it concerns the non-dischargeability of Plaintiff's claim pursuant to 11 U.S.C. § 523(a)(4). Indeed, Rusi's history of defiance and refusal to produce project records

7

merely supplies an additional ground for a finding of non-dischargeability in light of what Rusi already admitted to doing under oath: that he knowingly and routinely diverted project trust funds for non-trust expenditures in violation of the unambiguous strictures of the Lien Law. *See* Lien Law § 75[4]; see also Lien Law § 79–a[3].

C. *Rusi's Failure to Ever Produce Project Records, Compounded by Explanations in this Adversary Proceeding that are Belied by the Record, Warrant a Finding of Non-Dischargeability Under Section 727(a)(3)*

11 U.S.C. § 727(a)(3) permits the Court to deny discharge for a debtor's failure to maintain adequate financial records. "[T]he fundamental policy underlying §727(a)(3) is to ensure that the trustee and the creditors receive sufficient information to effectively enable them to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct debtor's business transactions." *In re Nemes*, 323 B.R. 316 (Bankr. E.D.N.Y. 2005) (internal quotation marks and citation omitted). Denial of discharge is warranted where any one of section 727's subsections is proved by a preponderance of the evidence. *In re Martin*, 208 B.R. 799, 805 (Bankr. N.D.N.Y. 1997).

Here, a preponderance of the evidence warrants the Court's denial of discharge. To begin, Plaintiff reiterates the history recited in its opening brief and reminds the Court that despite litigation spanning more than three (3) years, grants to Rusi for extensions of time to locate documents, and multiple requests, Rusi has *never* provided a single Project Document (*i.e.*, construction contract, requisition for payment, lien waiver, etc.). Moreover, the fact that Fahrenheit failed to properly retain these documents is supported by Rusi's absurd explanation for his failure to produce these documents in the State Court Action. Rather than admit that the documents never existed, Rusi instead asserts that he never received a request for such documents,

8

despite that the requests were both sent to Fahrenheit directly and sent to his counsel of record in the State Court Action. *See Indigo Secured High Income Note, Ltd.*, 2015 WL 9260908, at *1.

In addition, Rusi's own testimony suggests that the records never existed. Although Rusi initially testified that he knew the documents in question existed because he would review them at weekly team meetings, Rusi Tr. at 33:24-25, 34:1-2, he later acknowledged that he would not review the actual documents at those meetings but rather one-sheet progress reports per job, *id.* at 41:12-18.) Moreover, when Rusi was asked what kind of records Fahrenheit kept for various projects, he could not answer. (*See e.g.*, Rusi Tr. at 32:25, 33:1-2; 36:24-25, 37:1-12.) And while Rusi stated that he believed the necessary records were maintained in QuickBooks, he could not be sure because he lacked access to QuickBooks. (*Id.* at 33:5-8.) Indeed, Rusi could not recall how Fahrenheit maintained project records for any of the projects it worked on, *id.* at 40:23-25, 41:1-4.)

In light of Rusi's evasive testimony, as well as Fahrenheit's failure to ever produce any project records, it is clear that Fahrenheit never maintained the records required by the Lien Law and a finding of non-dischargeability is appropriate. *See In re Martin*, 208 B.R. at 805.

## **CONCLUSION**

In light of the foregoing, Ideal Supply respectfully requests that the Court grant Ideal Supply summary judgment on each of its causes of action and deem Ideal Supply's claim nondischargeable under sections 523(a)(4) and 727(a)(3), along with such further and other relief as the Court deems fair and appropriate.

Dated:  Woodbury, New York
September 5, 2024

9

        KAUFMAN DOLOWICH LLP
        *Attorneys for Plaintiff The Ideal Supply Company*

By: _____
        Erik A. Ortmann
        Adam A. Perlin
        135 Crossways Park Drive, Ste. 201
        Woodbury, NY 11797
        (516) 681-1100